1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KEATING et al.,

                        Plaintiffs,

v.

JASTREMSKI et al.,

                        Defendants.

Case No.:  3:15-cv-57-L-AGS

**ORDER ON COUNTERCLAIMANT THE RETIREMENT GROUP LLC'S MOTION FOR DEFAULT JUDGMENT (DOC. NO. 470) AND MOTION TO WITHDRAW AS COUNSEL FOR ARDENT RETIREMENT PLANNING LLC AND STEVE DALTON (DOC. NO. 478)**

Pending before the Court is Counterclaimant The Retirement Group LLC's ("TRG") motion for default judgment against Ardent Retirement Planning LLC ("Ardent"), Steve Dalton, and Lloyd Silvers (collectively, "Ardent Group").  (Doc. No. 470).  Ardent Group filed oppositions and TRG replied.  (Doc. Nos. 476-477, 479). [1]

---

[1] Dalton sought to present supplemental arguments against TRG's motion without his counsel.  (Oppo at 5).  Although that did not occur, the Court notes it would have been improper.  *See* Civ. L. R. 83.3(f)(1) ("whenever a party has appeared by an attorney, the party may not afterwards appear or act in the party's own behalf in the action, or take any

1

Also before the Court is a motion to withdraw as counsel for Ardent and Dalton.  (Doc. No. 478).  That motion is unopposed.  The Court decides the matters on the papers submitted and without oral argument.  *See* Civ. L. R. 7.1.  For the reasons stated below, the motions are granted.

## I.   Motion for Default Judgment

For purposes of this decision, the Court assumes the parties are familiar with the procedural and factual background of this case – which began in 2015.  Most recently, the Court granted TRG's motion for terminating sanctions as to Ardent, Silvers, and Dalton due to their intentional destruction of evidence.  (*See* Doc. No. 467).  The Court ordered the Clerk to strike their answers and enter a default against them.  (*Id*.; Doc. No. 468).  TRG thereafter timely filed a motion for default judgment.  (Doc. No. 470, TRG's Motion for Default Judgment ("Motion")).

The Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1367.  (*See* Doc. No. 469, TRG's Second Amended Counterclaim ("SAC") at ¶ 8).  The personal jurisdiction and venue requirements are also met.  A substantial portion of the alleged conduct occurred in this District.  (*Id.* at ¶ 9); 28 U.S.C. § 1391(b).  And the parties filed answers to TRG's counterclaims.   (*See* Doc. Nos. 37, 40, and 130); Fed. R. Civ. P. 12(h).  TRG satisfied the service requirements.  (*See* Motion).  It also demonstrated that no party is a minor, incompetent, or in military service.  *Id*.

Given the default, Ardent Group is deemed to have admitted the factual allegations in the SAC – except for those related to damages.  *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008); *see also* Fed. R. Civ. P. 8.  However, TRG is not automatically entitled to a court-ordered judgment – it is subject to the Court's discretion.  Fed. R. Civ. P. 55; *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986);

---

step in that action, unless an order of substitution has first have been made by the Court.")

3:15-cv-57-L-AGS

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 511-12 (9th Cir. 1986).

To decide whether to enter a default judgment, courts consider several factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986). The Court will discuss each factor.

### **Prejudice to TRG**

If the Court denied the motion, TRG would likely have no remedy against Ardent Group. This factor weighs in favor of default judgment.

### **Merits of TRG's Substantive Claims and Sufficiency of Allegations**

Under the first and second *Eitel* factors, the Court considers whether TRG stated a claim on which it could recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

TRG asserts a trade secrets misappropriation claim against Ardent Group under California law. To establish that claim, a party must allege: (1) it owned a trade secret; (2) the defendant acquired, disclosed, or used the trade secret through improper means; and (3) the misappropriation damaged the owner of the trade secret. *CytoDyn of N.M., Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008); Cal. Civ. Code § 3426.1(a)

In support of the motion, TRG incorporated the following documents from this case's docket: ECF Nos. 337, 381, 404-1, 404-7, 404-8, 404-9, 404-10, 432-1, 432-2, 432-3, 440. (*See* Motion at 8-9). No party objected to TRG's incorporation. (*See* Doc. No. 476-477). The documents reinforce the allegations, claims for relief, and damages sought. The Court finds it is appropriate to rely on this evidence. *See* Fed. R. Civ. P. 55.

3:15-cv-57-L-AGS

TRG alleges Ardent Group misappropriated its trade secrets, information on its current and prospective customers.  (*See* SAC; Doc. No. 467).[2]  That information can be considered a trade secret "where the employer has expended time and effort identifying customers with particular needs or characteristics."  *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997); *see MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (customer database qualified as a trade secret); *see also Abba Rubber Co. v. Roy J. Seaquist*, 235 Cal. App. 3d 1, 18 (1991) ("a customer list is one of the types of information which can qualify as a trade secret."); *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1291 (1990) (same).

TRG has demonstrated its client lists were the product of substantial time, expense, and effort.  TRG's client list compilations were the result of efforts including research, cold calls, personalized phone calls, targeted email, mail marketing, seminars, personal meetings, and referrals. (*See* SAC; Doc. No. 467).  TRG spends over two million dollars per year on its marketing and client service efforts. (SAC ¶ 13). TRG's client information has potential economic value because a competitor could use it to direct sales efforts to the current/prospective clients who will retire soon, are likely to use the services of a financial advisor, and represent the top 1-5% of employees at an employer.  (SAC ¶¶ 10-13; Doc. No. 467).  The TRG's client information was not accessible to the public or generally known to others in the industry and there is no public directory or readily available list containing the database contents.  (SAC ¶¶ 10-13).

TRG takes several efforts to maintain the secrecy of its information.  To obtain access to it, individuals must sign documents that prohibit the disclosure of the information.  (SAC ¶¶ 14-28).  Access to the database also requires a username and password.  *Id.*  TRG issues those credentials.  Before an individual is able to access the database, they are confronted with a "splash screen," which they must acknowledged.  *Id.*

---

[2] The Court incorporates its order on the motion for terminating sanctions and the evidence cited therein.

3:15-cv-57-L-AGS

The screen includes statements about confidentiality and the restrictions on the use of the information accessed. *Id.* The parties' plan to obtain information from TRG's database over an extended period to avoid detection reinforces the fact that TRG took steps to protect the release of that information. (*See* SAC; *see also* Doc. No. 337-1 at 189:17-24 and 191:23-192:4); *Courtesy Temporary Service, Inc.*, 222 Cal.App.3d at, 1288. TRG alleges it owned the trade secrets. (*See* SAC).

Ardent Group solicited TRG's investment advisors to move to Ardent and take the information with them. (SAC ¶¶ 27-28, 30-32; Doc. No. 467 at 5-9). Dalton had TRG's former employees, including Silvers, download TRG's proprietary information before their departures. (*See* Doc. No. 337-2 at 50 (Dalton and Silvers download information to upload into Ardent's database)); (Doc. No. 337-2 at 36-37 (Dalton informing Keating Group to upload data into cloud accounts . . . and Keating Group would take client data and marketing materials)); (Doc. No. 467). And the misappropriation resulted in damages. (*See* SAC).

It is also notable that Ardent Group filed an answer in this case – not a motion to dismiss.

Overall, TRG states a claim for trade secret misappropriation against Ardent Group.[3] The first and second factors weigh in favor of default judgment.

**Sum of Money at Stake**

The fourth *Eitel* factor considers whether the amount at stake is proportional to the alleged misconduct. TRG seeks disgorgement from Ardent Group (the money they received as a result of the alleged misappropriation). It also seeks exemplary damages and attorneys' fees/costs, which are authorized under state law. TRG's request is therefore reasonable. The fourth factor weighs in favor of default judgement.

---

[3] TRG does not argue the merits of their contract and unfair business practices claims. Therefore, the Court does not address the merits of those claims.

3:15-cv-57-L-AGS

## Possibility of a Dispute Concerning Material Facts

Again, all factual allegations – except those related to damages – are deemed admitted upon the entry of default.  There is therefore no dispute concerning material facts.  The fifth factor does not weigh against default judgement.

## Excusable Neglect

The Court ordered the Clerk to strike Ardent Group's answers and enter a default against them for their intentional destruction of evidence.  (Doc. No. 467).  The default has nothing to do with neglect.  The sixth factor weighs in favor of default judgment.

## Decision on the Merits

Ardent Group sought to prevent a decision on the merits.  (Doc. No. 467 at 22-24). Their actions made it impractical – if not impossible.  The seventh factor weighs in favor of default judgment.[4]

Overall, default judgment is warranted.  The Court must next consider TRG's request for relief: unjust enrichment, exemplary damages, prejudgment interest, and attorneys' fees/costs.

## Unjust Enrichment

TRG seeks an unjust enrichment award against Ardent Group.  *See* Cal. Civ. Code § 3426.3(a) ("a complainant may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.")

In general, upon default, damages must be proven.  *See Derek Andrew, Inc.*, 528 F.3d at 702; Fed. R. Civ. P. 55.  If a claim is for an amount that is uncertain, the Court – not the Clerk – may enter the default judgment.  *See* Fed. R. Civ. P. 55.  The Court has wide discretion to determine the amount of damages.  *Id*.  It is not required to hold a hearing.  *Id*.; *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015); *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d

---

[4] Notably, Ardent Group also had the ability to testify and put forward evidence during the Special Master's six-day hearing on the parties' motion for sanctions.

429, 436 (1st Cir. 2015).  Ardent Group also did not request a hearing on damages.  (Doc. Nos. 476-477).

"Damages are not rendered uncertain because they cannot be calculated with absolute exactness . . . it is sufficient if a reasonable basis of computation is afforded." *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 379 (1927); *NewGen, Ltd. Liab. Co. v. Safe Cig, Ltd. Liab. Co.*, 840 F.3d 606, 617 (9th Cir. 2016) (affirming default judgment award based on estimated profits/future projections); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("to establish damages under the lost profits method, a plaintiff must make a prima facie showing of reasonably forecast profits."); *S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989) ("disgorgement need only be a reasonable approximation of profits causally connected to the violation."); *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014) (there is "broad latitude in quantifying damages, especially when the defendant's own conduct impedes quantification . . . even speculation has its place in estimating damages.") (internal quotation marks and citation omitted).

Here, TRG submitted evidence to show Dalton received approximately 12% of the commissions Keating, Gigliotti and Mele ("Keating Group") earned.  (Motion at 17-19; Doc. No. 470-2, Exhibit 2).[5]  He also received a 3% bonus on the commissions for a three-year period.  (Motion at 19; Doc. No. 470-27, Exhibit 1).  TRG obtained the commission reports from January 12, 2015 through March 31, 2016.  (Doc. No. 470-27).  TRG set forth evidence to show about 88.14% of the assets under Keating Group's

---

[5] Ardent and Dalton objected to the evidence under Federal Rules of Evidence 602 and 702.  (Oppo at 3).  Their objection is based on Jastremski's declaration.  But, as TRG points out in its Reply, this information is from deposition testimony of Sam Briganti – the chief recruiter for Securities America – who testified about Dalton's compensation structure.  (*See* Doc. 470-27, Exhibit 2).  Ardent and Dalton's counsel was present at the deposition.  (*Id.* at Exhibit 2 at Page 65).  And, as mentioned above, TRG incorporated this evidence in support of its motion.

3:15-cv-57-L-AGS

management consisted of TRG's former clients.  Id.  And commissions correlate with the

assets under management.  *Id*.  TRG used that number to calculate an estimate of the

commissions Keating Group received from TRG's former clients.  *Id*.  From January 12,

2015 through March 31, 2016, the commissions amounted to $1,266,064.82 (88.14% of

the total commissions - $1,436,419.10).  *Id*.  Because TRG did not obtain reports for

April 1, 2016 through April 30, 2020, it estimated the amounts based on the commissions

from January 12, 2015 through March 31, 2016.[6]  *Id*.  In essence, TRG calculated the

daily commissions earned during the known period and used that figure to estimate

commissions earned from April 1, 2016 through April 30, 2020.[7]  *Id*.  That calculates to

$4,182,281.32.  *Id*.  Based on the Dalton's compensation percentage, TRG estimates he

received $653,801.54 ($5,448,346.14 (Keating Group's estimated commissions from

TRG clients) x 12%).  *Id*.  And TRG estimates Dalton's 3% bonus – based on the

commissions – amounted to $92,180.89.  The 3% bonus is calculated for a three-year

period, 2015 – 2017.  (Doc. No. 470-27, Exhibits 1 and 7).  Overall, TRG seeks

$745,982.43 from Dalton.  (Motion at 17).

Dalton argues TRG overestimated the amount he received.  (Oppo at 3).  The

Court finds this argument suspect.  Dalton – without question – is in the strongest

---

[6] Dalton and Ardent contend TRG obtained all the compensation statements related to the Keating Group.  (Oppo at 3).  Yet, Dalton and Ardent did not submit or cite evidence to support that contention.  *Id*.  In contrast, TRG submitted a declaration from Jastremski in which he states he does not have the commission reports from April 1, 2016 through April 30, 2020.  (*See* Doc. No. 470-27 at 6-7).

[7] Jastremski relied on his extensive experience and knowledge of the securities industry to support his estimate on the compensation structure, commissions, and assets under management.  (Doc. No. 470-27).  The Court acknowledges Jastremski – as the owner of TRG – is biased.  Yet, the Court finds his statements credible.  Jastremski also used conservative numbers to calculate his estimates (including assuming the assets under management did not increase over the four years and commissions remained level).  *Id*.  In contrast, Dalton – who also has experience in the securities industry and firsthand knowledge about his compensation – did not submit an affidavit to rebut Jastremski's analysis.  (Doc. No. 476).

position to refute TRG's estimates.  After all, the amount at issue is what he earned.  And the amount sought is rather substantial.  Yet, he did not submit evidence to support his argument (such as an affidavit or documents related to his compensation).  (*See* Doc. No. 476);  *NewGen, Ltd. Liab. Co.*, 840 F.3d at 617 (rejecting claim that evidence was unreliable where the objecting party had access to records required to refute the estimates); *see also Eastman Kodak Co.*, 273 U.S. at 379 ("a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.")

The Court finds TRG's estimates are reasonable and linked to Dalton's misappropriation.  *NewGen, Ltd. Liab. Co*, 840 F.3d at 617 (affirming default judgment award based on estimated profits/future projections).

TRG contends Silvers received $97,573.74 in connection to his role in the misappropriation.  (Motion at 21).  That amount was received from a recruiter who assisted in the transfer of advisors from TRG to Ardent.  (Doc. No. 337-1 at 315:17-316:6; Doc. No. 470-27 at Exhibit 8).  Silvers does not refute that he received that amount.  (*See* Doc. No. 477-1).  The Court finds there is sufficient evidence to reasonably show Silvers received that amount and it was connected to the misappropriation.

TRG argues Ardent should be held jointly and severally liable for the total amount of disgorgement from Dalton and Silvers.   (Motion at 21).  Ardent does not present an argument against TRG's request.  *See* Civ. L. R. 7.1(f)(3).  The Court finds joint and several liability to be appropriate under the circumstances.[8]  *See, e.g., Davis v. Kiewit Pac. Co.*, 220 Cal. App. 4th 358, 365 (2013); *Cruz v. Homebase*, 83 Cal. App. 4th 160, 167 (2000).

---

[8] TRG states in its Motion that Ardent is no longer in business.  (Motion at 21).  Ardent's counsel did not respond to that statement.  The Court therefore will assume Ardent is still an active limited liability company – even if it is nonoperational.

3:15-cv-57-L-AGS

**Statutory Interest**

TRG argues it is entitled to over $100,000 in prejudgment interest under California Civil Code section 3287(a).  That section applies to the recovery of damages.  *See* Cal. Civ. Code § 3287(a).  However, TRG states it does not seek damages.  (Motion at 16:26) ("[TRG] seeks restitution, *not damages*.") (emphasis added); Cal. Civ. Code § 3426.3(a) ("a complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.")

Given that, an award under section 3287(a) is not appropriate.  *See, e.g., Rodriguez v. RWA Trucking Co., Inc.*, 238 Cal. App. 4th 1375, 1409-10 (2013) ("we conclude Civil Code section 3287 does not authorize prejudgment interest on an award of restitution under the UCL."); *M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*, 202 Cal. App. 4th 1509, 1538 (2012); *Kolb v. Telling*, 2018 U.S. Dist. LEXIS 88475, at *25 (E.D. Cal. 2018) (stating plaintiff was not entitled to prejudgment interest on a restitution award for a quasi-contract claim and noting "the California Court of Appeal has reasoned that Section 3287(a) authorizes prejudgment interest only for the recovery of damages."), *Kolb v. Telling*, 2018 U.S. Dist. LEXIS 220842, at *2 (E.D. Cal. Sep. 7, 2018) (order adopting findings and recommendations); *compare 02 Micro Int'l Ltd. v. Monolithic Power Sys.*, 420 F. Supp. 2d 1070, 1077 (N.D. Cal. 2006) (awarding interest under Cal. Civ. Code § 3288 in trade secret misappropriation case).  Notably, the purpose of prejudgment interest is to compensate the injured party for the accrual of wealth which could have been produced during the period of loss.  *Cassinos v Union Oil Co.*, 14 Cal. App. 4th 1770, 1790 (1993).  TRG's request for relief is based on Ardent Group's unjust enrichment, not TRG's lost profits (the amount it would have had to accrue wealth).[9]

---

[9] TRG also did not discuss or apply the standard under section 3287(a).  (Motion at 19); *see Nat'l Union Fire Ins. Co. v. Showa Shipping Co.*, 47 F.3d 316, 324 (9th Cir. 1995); *Duale v. Mercedes-Benz USA, LLC*, 148 Cal. App. 4th 718, 728 (2007).

**Exemplary Damages**

TRG requests exemplary damages against Ardent Group under California Civil Code section 3426.3(c). TRG contends Ardent Group's theft of its trade secrets was willful and malicious.[10] It seeks the full amount authorized – two times the unjust enrichment award.

The Court must first determine whether Silvers and Dalton were willful and acted with malice when they misappropriated TRG's trade secrets.

"Willful" means the person acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith. *Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 67 (2005). "Malice" means that the person acted with an intent to cause injury or that their conduct was despicable and was done with a willful and knowing disregard for the rights of others when they are aware of the probable consequences of their conduct and willfully and deliberately fails to avoid those consequences. *Id*. "Despicable conduct" is conduct so vile that decent people would despise and look down at it. *Id*.; *see also* California Civil Jury Instruction 4411.

Here, TRG has shown – through clear and convincing evidence – that Dalton and Silvers were willful and malicious. Dalton and Silvers intended to obtain TRG's trade secrets for their use through a prolonged, covert operation. (*See* Doc. No. 467 at 5-7). They assisted in the downloading of data from TRG's database. (*See, e.g.*, SAC ¶¶ 27-28, 30-32; Doc. No. 467; Doc. No. 337-2 at 50, 36-37). That data was slowly transferred to Ardent's database. TRG spent significant recourses on gathering its trade secrets. Instead of doing the same, Dalton and Silvers planned to simply take it from TRG.

---

[10] TRG also relies on Ardent Group's destruction of evidence to support exemplary damages. (*See* Motion at 20; Doc. No. 470-27, Jastremski Decl. at ¶ 76). However, section 3426.3(c) concerns the trade secret misappropriation – not all willful and malicious conduct. The Court therefore disregards those arguments.

Dalton and Silvers do not argue their actions were unintentional. (*See* Oppos). It was also unreasonable to obtain a company's trade secrets through theft. Their actions were not done in good faith.

An ordinary person would look down at their conduct. *Ajaxo Inc.*, 135 Cal. App. 4th at 67 (it is reasonable to conclude a prolonged course of thievery is despicable conduct).

The Court next considers the following factors in determining whether to award exemplary damages: (1) the particular nature of the defendant's acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the particular defendant. *See Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 928 (1978).

Dalton – as Ardent's managing member – oversaw the entire misappropriation. *Supra*. As a current/prior supervisor of advisors – unlike Silvers – Dalton can carry out a similar operation again. And his conduct in this case tends to demonstrate a disregard for the rule of law. (Doc. No. 467). The unjust enrichment award is not sufficient to deter similar conduct. It is therefore appropriate to award exemplary damages. TRG submitted evidence as to Dalton's wealth. For instance, in 2014, he made over $2 million on the sale of his business. (*See* Doc. No. 470-27, Exhibit 1). He also received commissions from advisors he managed (more than what TRG sought above). (*See* 470-27 at 11-12; 470-27at Exhibit 2). Dalton did not submit evidence in support of his opposition. TRG is seeking $1,491,964.86 in exemplary damages. (Motion at 21). In considering all the factors and circumstances, the Court finds $50,000 is an appropriate amount.

There is nothing to suggest Silvers is in a similar position as Dalton to repeat their actions against a new target. There is also no evidence as to Silvers' wealth. (Motion at 21). In considering all the factors and circumstances, the Court finds the unjust

enrichment award against him is sufficient.  Therefore, it declines to award exemplary damages against Silvers.[11]

### Injunctive Relief

TRG seeks a permanent injunction against Ardent Group.  (Doc. No. 470-27 at 13-14).  A court can enjoin "actual or threatened misappropriation."  Cal. Civ. Code § 3426.2 (a).[12]  Ardent Group does not contest or oppose TRG's request.  (*See* Oppos).

Here, there is nothing to indicate Ardent, Dalton, or Silvers will not use TRG's trade secrets.  In fact, given the value of the trade secrets and Ardent Group's conduct in this case, the Court finds there is a threat of continued violations.  There is no sufficient remedy at law to protect against future misappropriation.  There is also a strong public interest in protecting trade secrets. And misappropriation would cause TRG irreparable harm.[13]  Therefore, the circumstances favor a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."); s*ee also ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006, 1011(2005).

---

[11] The Court also notes the award of attorneys' fees and costs will likely deter future conduct.  *See FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1275 (2009) (noting an award under California Civil Code section 3426.4 is considered a sanction); *see also Gemini Aluminum Corp. v. Cal. Custom Shapes*, 95 Cal. App. 4th 1249, 1262 (2002).

[12] TRG does not seek an order requiring Ardent Group to return the trade secrets in its possession.  (Motion at 23); *see also* Cal. Civ. Code § 3426.2(c) (a court can compel "affirmative acts to protect a trade secret.")

[13] The misappropriation occurred several years ago, in 2014 and 2015.  (*See* SAC). Nevertheless, the information is still useful (to solicit customers including current and prospective retirees).

3:15-cv-57-L-AGS

1    "In determining the proper scope of an injunction, California law requires

2    consideration of the employer's interest in protecting its trade secrets and the former

3    employees' interest in working and competing in their chosen field." *ExamWorks, LLC v.*

4    *Baldini*, 835 F. App'x 251, 252 (9th Cir. 2020).

5    After considering all the factors, the Court finds a permanent injunction is

6    appropriate.  The Court therefore enjoins Ardent, Dalton, and Silvers from using TRG's

7    trade secrets – TRG's information on current and prospective clients misappropriated

8    from its database.

9    The Court is careful to avoid infringing upon the rights of investing clients to

10   choose their advisors and preventing Ardent Group from competing with TRG's

11   customers without the use of its trade secrets.  This order does not prohibit or restrict all

12   solicitation of TRG's current, past, or prospective customers – it simply prohibits Ardent

13   Group from using the misappropriated trade secrets to solicit customers.  It also does not

14   prevent Ardent Group from creating their own current/prospective client lists through

15   lawful efforts.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009) (injunctive

16   relief must "be tailored to remedy the specific harm alleged."); *ExamWorks, LLC*, 835 F.

17   App'x at 252.

18   TRG also requests an injunction against Silvers related to a signed agreement.

19   (Motion at 23).  This request is linked to TRG's breach of contract claim against Silvers.

20   (SAC at 27-28).  The agreement states TRG is "entitled to injunctive relief to enforce the

21   [agreement.]" (SAC, Exhibit 8).  But that does not require the Court to issue an injunction

22   in this case.  The agreement restricts Silvers' activities up to 36 months after his

23   termination.  *Id*.  That time has now passed.  And TRG did not argue the merits of that

24   claim in its Motion.  The Court also finds the above injunction to be sufficient.

25   Therefore, the Court declines to issue an injunction related to Silvers' agreement.

26

27

28

3:15-cv-57-L-AGS

1

### Attorney Fees and Costs

2

TRG requests $1,889,869.92 in attorneys' fees.  (Motion at 21).[14]  It also seeks

3

over $85,000 in recoverable costs.  (Doc. No. 470-2 at 17; Doc. No. 470-26 at 3).  Courts

4

can award a prevailing party reasonable attorneys' fees and costs if the misappropriation

5

was willful and malicious.  *See* Cal. Civ. Code § 3426.4.  It is subject to the Court's

6

discretion.  *Id.*; *FLIR Sys., Inc.*, 174 Cal. App. 4th at 1275.

7

The Court already determined Dalton and Silvers were willful and malicious.  The

8

Clerk entered a default judgment against Ardent Group.  The Court also found the trade

9

secret misappropriation claims to be sufficient and awarded TRG relief.  Therefore, TRG

10

is a prevailing party.

11

TRG's request includes all fees and costs incurred throughout the entire case.

12

Ardent Group argues TRG should not be allowed to recover from them all the fees and

13

costs.  The Court agrees.

14

A court can apportion attorney fees under certain circumstances.  *Lahiri v.*

15

*Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222 (9th Cir. 2010) ("an

16

apportioned percentage is not an abuse of discretion because it would be impossible to

17

determine with mathematical precision the fees and costs generated only by [one

18

party]."); *see also The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 834–35

19

(9th Cir. 2003) ("there is no precise rule or formula for making these determinations. The

20

district court may attempt to identify specific hours that should be eliminated, or it may

21

simply reduce the award to account for the limited success. The court necessarily has

22

discretion in making this equitable judgment."); *Moreno v. City of Sacramento*, 534 F.3d

23

1106, 1112 (9th Cir. 2008); *see, e.g., Corder v. Gates*, 947 F.2d 374, 383 (9th Cir. 1991)

24

("we have prescribed apportionment of attorney's fees when the time expended by the

25

plaintiff in pursuing each defendant was grossly unequal.") *and Woods v. Graphic*

26

27

28

[14] Throughout this case, TRG retained four law firms/attorneys.  (*See* Doc. No. 470-2, Klein Declaration at 4-5, 17).

3:15-cv-57-L-AGS

*Communications*, 925 F.2d 1195, 1207 (9th Cir. 1991) (affirming district court's apportionment of fees based on work performed in connection with each defendant during different stages in the litigation).

The Court has discretion to determine the allocation of attorneys' fees and costs among multiple defendants. *See, e.g., Koster v. Perales*, 903 F.2d 131, 139 (2d. Cir. 1990). In allocating attorneys' fees and costs among multiple defendants, a district court "should make every effort to achieve the most fair and sensible solution that is possible." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 960 (1st Cir. 1984); *see also Sable Commc'ns of Cal., Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 194-195 (9th Cir. 1989). Courts have reduced attorneys' fees when work associated with claims against multiple defendants fell upon the only defendant to survive dismissal. *See Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1070 (N.D. Cal. 2012); *see, e.g., Employee Painters Welfare Tr. v. Atlas Painting & Drywall, LLC*, 2011 U.S. Dist. LEXIS 138618, at *7 (D. Nev. 2011) (court awarded fees proportionate to the number of defendants sanctioned under a particular motion).

"The impossibility of making an exact apportionment does not relieve the district court of its duty to make some attempt to adjust the fee award in an effort to reflect an apportionment. In other words, apportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless." *Gracie v. Gracie*, 217 F.3d 1060, 1069-70 (9th Cir. 2000).

Here, an apportionment is appropriate.  Former Cross-Defendants Jeremy Keating, Richard P. Gigliotti and Alexander J. Mele – not Ardent Group – initiated this case.  All three filed a complaint against TRG and Jastremski.[15]  Their complaint included

---

[15] The Court notes that Jastremski is no longer a party to this case and is not a crossclaimant.  The submitted invoices are for fees incurred in defending TRG *and* Jastremski.  TRG seeks to recover all the fees – even those attached to Jastremski.

employment, labor, and securities claims.  (*See* Doc. Nos. 1, 17, and 110).  TRG incurred fees defending against those claims.  For instance, TRG filed a motion to dismiss the Keating complaint.  (*See* Doc. No. 6).

As TRG's counsel acknowledges, significant time was consumed opposing Keating, Gigliotti, and Mele's motion for summary judgment.  (Doc. No. 470-26, Metzger Declaration at ¶ 4; Doc. No. 470-26, Exhibit 1 at 31; Doc. No. 42, Motion for Summary Judgment).  Not all discovery disputes involved Ardent Group.  (*See* Doc. No. 97) (motion to compel involving Keating, Gigliotti, and Mele); (Doc. No. 183) (motion to compel involving Securities America); (Doc. No. 470-2, Klein Decl. at ¶ 47) (citing Doc. Nos. 97 and 183 to support TRG's request).

On May 7, 2019, Keating, Gigliotti, and Mele were dismissed pursuant to a joint motion and settlement.  (Doc. No. 408).[16]  Securities America – another former Cross-Defendant – settled too.  (Doc. No. 403).  Their involvement in the case – spanning more than four years – was significant.  (*See* Motion at 7 ("the majority of culprits settled."); Doc. No. 470-2, Klein Declaration at 15 (referring to time spent on employment claims that were settled and "mooted"); Doc. No. 470-2, Klein Declaration at 15 (noting the complexity of the case due, in part, to the employment claims and the California Supreme Court's decision in *Dynamex Operations W., Inc. v. Superior Court*, 4 Cal. 5th 903 (2018) (relating to the classification of workers as employees or independent contractors))).

There are some entries in the invoices that can be separated between individual parties.  For instance, the invoices include fees incurred related to TRG's settlement with SAI and the Keating Group.  (Doc. No. 470-2, Klein Decl., Exhibit 1 at 517-518, 527-

---

[16] The parties agreed to bear their own fees and costs.  (*Id.*; Doc. No. 407.).

529, and 537).  There are also the entries related to the other parties' motions.  But, overall, it is difficult for the Court to allocate all individual entries.[17]

Dalton was also not a party in this case until December 28, 2016, more than one year after TRG filed its original counterclaim.  (*See* Doc. No. 108).[18]  Overall, under the above circumstances, it is appropriate to make an across-the-board apportionment.  *See Cook Productions, LLC v. Szerlip*, 2017 U.S. Dist. LEXIS 179687, at *13 (D. Haw. 2017) ("courts have reduced attorney's fees when work associated with claims against multiple defendants fell upon the only defendant to survive dismissal.")

The Court is very familiar with the claims, parties, and procedural history of this case.  After a careful review of the motion for default judgment, exhibits, declarations, and the docket, the Court finds it is appropriate to apportion 20% of the fees/costs from *Duckor Spradling Metzger and Wynne* to Ardent Group.  The firm was retained "primarily to . . . deal with the labor and employment and securities claims."  (Doc. No. 470-26, Metzger Declaration at ¶ 6); (Doc. No. 470-27, Jastremski Decl. at ¶ 101) (stating the firm "focused primarily on securities and employment issues.")  The firm also handled filing an opposition to Keating, Gigliotti, and Mele's motion for summary judgment, which consumed a significant amount of time.  (Doc. No. 470-26, Metzger Declaration at ¶ 4).  The firm nevertheless assisted with the trade secrets claims and its other work was somewhat connected to those claims.  The Court similarly finds it is appropriate to apportion 40% of the fees/costs from the remaining three firms/attorneys – which were retained for the trade secret claims – to Ardent Group.  The apportionments consider the former parties, their claims, and activities in this case.  The apportionments will apply to all fees and costs incurred up until the Court dismissed Keating, Gigliotti,

---

[17] The Court acknowledges the claims against all counter-defendants overlapped.  And the claims TRG defended against were related, in part, to its trade secrets.

[18] The Court recognizes that some of the work performed before Dalton was added as a party might be attributable to Dalton because that pre-filing work led to evidence supporting the allegations against him.

and Mele on May 7, 2019.  The fees and costs incurred after that time – which the Court calculates as $93,436.58 – will be awarded in full against Ardent Group.  (Doc. No. 470-23, Exhibit 1 at 537-584; Doc. No. 470-26, Exhibit 1 at 166).

The Court must next consider whether the fees incurred are reasonable.  TRG submitted detailed records about the hours expended and rates charged.  (*See* Doc. No. 470); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

Ardent Group does not contest the reasonableness of the hours or rates.  (*See* Oppos).  The amounts are therefore presumed reasonable.  *Velez v. Wynne*, 220 Fed. App'x 512, 515 (9th Cir. 2007) ("in the absence of opposing evidence, the proposed rates are presumed reasonable.") (internal quotation marks and citation omitted).

The Court nevertheless considers the "lodestar" calculation – a reasonable number of hours times a reasonable hourly rate (prevailing local rate for an attorney of the skill required to perform the litigation).  *See Fischer v. SJB—P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).

The Court finds the number of hours was reasonable given the length of the case, complexity of the legal issues presented, and the discovery disputes.  Although this case is now at the default judgment stage, it proceeded through discovery and dispositive motions.  The parties also participated in a six-day evidentiary hearing before the Special Master that involved substantial testimony.  The Court also finds the rates were reasonable.  The hours and rates are adequately supported through declarations and exhibits.  TRG's counsel from *Klein & Wilson* and *Duckor, Spradling, Metzger & Wynne* submitted declarations to support their rates, including information on their respective legal experiences and qualifications.  They also discussed the complexity of the case (including subject matter and discovery issues).  In addition, Mr. Klein provided an evaluation on the invoices from TRG's prior attorneys.  *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  And, again, Ardent Group did not contest the reasonableness of the hours or rates.

3:15-cv-57-L-AGS

TRG also seeks costs for litigation expenses, including costs related to depositions, process servers, transcripts, and mail service. (*See* Doc. No. 470-2, Exhibit 1). Ardent Group did not dispute the reasonableness of the costs. (*See* Oppos). After a review of the invoices, the Court finds the costs are reasonable and proper.

From a review of the docket, it appears TRG received $26,703 in sanctions (incurred attorneys' fees). (*See* Doc. Nos. 188, 367, and 392; Reply at 7). TRG did not account for those sanctions in its current request. (*See* Reply at 7). The Court will deduct that amount from the award.

Pursuant to the above assessment, the Court awards TRG $764,547.72 in attorneys' fees and costs against Ardent Group.[19]

## II.    Motion to Withdraw as Counsel

On July 29, 2020, counsel for Ardent and Dalton – Robert Bursky and Assly Sayyar – filed a motion to withdraw from the representation. (Doc. No. 478). The motion is unopposed. (Doc. No. 480). For the reasons stated below, the motion is granted.

In ruling on a motion to withdraw as counsel, courts consider: (1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case. *Garrett v. Ruiz*, 2013 U.S. Dist. LEXIS 8053, at *5 (S.D. Cal. 2013).

---

[19] The Court performed the following calculation to arrive at this final amount: $21,956.40 (Richard Lucal's $54,891 in fees/costs * 40%) + $ 43,390.38 (Diepenbrock's $108,475.97 in fees/costs * 40%) + $54,829.61 (Duckor's $274,148.09 in fees/costs * 20%) + $577,637.75 (Klein's $1,444,094.38 in fees/costs * 40%) = $697,814.14. *See* Doc. No. 470-25, Exhibit 4 at 591. The Court then added the full amount of fees/costs Klein and Duckor incurred after the May 7, 2019 dismissal, $93,436.58. Finally, the Court subtracted the prior sanction awards, $26,703.

3:15-cv-57-L-AGS

1
2
3
4

The Court denied a prior motion to withdraw as counsel.  (*See* Doc. No. 473).  The withdrawal would have prejudiced Ardent and Dalton because TRG planned to file a motion for default judgment.  *Id*.  The withdrawal would also have delayed the resolution of the case.  *Id*.

5
6
7
8
9

Here, Ardent and Dalton requested their counsel withdraw from the representation.  (Doc. No. 478).  Ms. Sayyar also seeks to withdraw because Ardent and Dalton have failed to pay their bills.  *Id*.  That can support the granting of a motion to withdraw.  *Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 U.S. Dist. LEXIS 8492, at *4 (S.D. Cal. 2010) ("failure to pay attorney's fees can be valid ground for withdrawal.")

10
11
12
13

Mr. Bursky, who is appearing *pro hac vice*, seeks to withdraw because – upon Ms. Sayyar's withdrawal – he will no longer have a local counsel.  (Doc. No. 478).  Ardent and Dalton informed him they do not intend to retain local counsel to replace Ms. Sayyar.  *Id*.

14
15
16
17
18

Ms. Sayyar filed an opposition to TRG's motion for default judgment.  (Doc. No. 476).  Because the Court has now ruled on the motion for default judgment, Ardent and Dalton will not suffer substantial prejudice from the withdrawal.  And it will not delay the resolution of the case.  They also request the withdrawal.  For all these reasons, the Court finds it is appropriate to grant the motion.[20]

19
20
21
22
23
24
25
26
27
28

---

[20] Ardent – as an entity – cannot represent itself.  *See* Civ. L. R. 83.3.  Ardent does not intend to retain new counsel.  (Doc. No. 478).  An unrepresented entity is subject to default.  *United States v. High Country Broadcasting Co., Inc.*, 3 F.3d 1244 (9th Cir. 1993).  Because Ardent has already defaulted, the Court finds it is appropriate to grant the request to withdraw.  *See Arco Envtl. Remediation, L.L.C. v. RDM Multi-Enters., Inc.*, 166 Fed. Appx. 929, 930 (9thCir. 2006); *McNally v. Commonwealth Fin. Sys.*, 2013 U.S. Dist. LEXIS 26346 (S.D. Cal. 2013) (granting motion where litigation was at an early stage and where corporate defendant was unable to pay legal fees, consented to the motion, and had "ample opportunity to retain substitute counsel as needed."); *Ameranth, Inc. v. Splick-It, Inc.*, 2021 U.S. Dist. LEXIS 18690, at *2 (S.D. Cal. 2021).  Ardent must retain counsel to appear in this case.

3:15-cv-57-L-AGS

### III.   Conclusion

For the reasons stated above, the Court **GRANTS** TRG's motion for default judgment.[21]   The Court orders as follows:

1.   TRG is awarded $745,982.43 in unjust enrichment against Dalton. Ardent is jointly and severally liable.

2.   TRG is awarded $50,000 in exemplary damages against Dalton.

3.   TRG is awarded $97,573.74 in unjust enrichment against Silvers. Ardent is jointly and severally liable.

4.   TRG is awarded $764,547.72 in attorneys' fees and costs against Ardent, Dalton, and Silvers.

5.   Ardent, Dalton, and Silvers are enjoined from using TRG's trade secrets – TRG's information on current and prospective clients misappropriated from its database.

The Clerk shall enter judgment consistent with this order.   The Court also **GRANTS** the motion to withdraw as counsel.

**IT IS SO ORDERED.**

Dated:  March 30, 2021

Hon. M. James Lorenz
United States District Judge

---

[21] Silvers, in the conclusion section of his opposition, requests the Court set aside the judgment under Federal Rule of Civil Procedure 60.  (Oppo at 10-11).  The request – contained in a conclusion of an opposition – is improper.  *See* Civ. L. R. 7.1.  There is also insufficient support for the relief sought.  (Oppo at 10-11).  The Court therefore denies Silvers' request without prejudice.